UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>DESHAWN A. RAY,<br><br>        Defendant. | No. 2:11-CR-00216-MCE<br><br>**MEMORANDUM AND ORDER** |

Defendant Deshawn Ray ("Defendant") proceeded to trial on a Second Superseding Indictment charging him with: (1) one count of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. §§ 1344, 1349; (2) two counts of Bank Fraud in violation of 18 U.S.C. § 1344; (3) and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 73. On December 11, 2014, the jury found the Defendant guilty on all counts. ECF No. 156. Presently before the Court is Defendant's Motion for New Trial ("Motion") (ECF No. 223), which the Government opposes (ECF No. 237). The Court held a hearing on this matter on December 10, 2015. Having considered all materials in the record and the arguments of counsel before the Court, Defendant's Motion is now DENIED.

///

///

## BACKGROUND

The original indictment in this case charged Defendant with a single count of Bank Fraud in violation of 18 U.S.C. § 1344 and a single count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. ECF No. 1. These charges arose out of the fraudulent withdrawal of funds from a victim's bank account by means of the unauthorized use of the victim's identifying information. Id. A Superseding Indictment, which was returned on January 12, 2012, added a charge of Conspiracy to Commit Bank Fraud from 2008 to 2010, an additional Bank Fraud charge, and two co-defendants, Reginald Thomas and Damian Edgerson. ECF No. 26.

On January 13, 2012, Defendant, accompanied by Trial Counsel Julius Engel ("Trial Counsel"), attended a proffer session at the U.S. Attorney's office. Decl. of Matthew G. Morris ("Morris Decl."), ECF No. 237-1, ¶ 4; Decl. of Julius M. Engel ("Engel Decl."), ECF No. 237-2, ¶ 11; Decl. of Warren Read ("Read Decl."), ECF No. 237-3, ¶ 2. On February 3, 2012, Defendant and Trial Counsel met with the Government for another proffer session, this time attended by an additional secret service agent. Id. Defendant was thereafter arraigned on the Superseding Indictment. ECF No. 33.

In March 2012, the Government sent Trial Counsel a letter highlighting the evidence against Defendant and providing notice of the Government's intent to introduce evidence under Federal Rule of Evidence 404(b). Engel Decl. ¶ 12; Morris Decl. Ex. B. The Government provided a detailed description of all evidence and provided its best estimate of the probable guideline range Defendant would face at sentencing. Id.

In the fall of 2012, co-Defendant Edgerson pled guilty and was later sentenced to eighteen months in prison. ECF Nos. 56, 69. Subsequently, in March 2013, a Second Superseding Indictment was filed adding an additional co-Defendant, Tiffany Tung. ECF No. 73. Over the course of the following six months, Defendant's Trial Counsel and the Government engaged in plea discussions. Engel Decl. ¶¶ 13, 16-17, 19; Morris Decl. Exs. C-F. Defendant ultimately rejected the Government's "best offer." Id.

Co-Defendant Thomas pled guilty the following week, and the October 2013 trial was thereafter continued at the request of newly indicted co-Defendant Tung. ECF Nos. 89-90.

At the end of January 2014, Defendant attended a "reverse proffer" with the Government. Morris Decl. ¶ 4; Engel Decl. ¶ 20; Read Decl. ¶ 3. At this "reverse proffer," the Government explained its case, including the evidence and anticipated trial testimony, directly to Defendant. Id. The Government thereafter re-extended its "best offer," and also indicated it would be the last. Engel. Decl. ¶ 20; Morris Decl. Ex. G. Defendant again rejected the offer. Id.

Co-Defendant Tung then pled guilty, and Defendant set a trial date of December 1, 2014. ECF Nos. 114-15. At the trial confirmation hearing on November 6, 2014, the Government estimated that the trial would occupy all available trial days during the week of December 1 and would spill over into December 7 and 8. Tr. Dec. 4, 2014, Hr'g on Def.'s Mot. Continue ("Dec. 4, 2014 Tr."), ECF No. 213, 6:25-7:2. The Court subsequently sua sponte continued the trial by one week from December 1 to December 8. ECF No. 130.

The Government filed motions in limine on November 17, 2014. ECF No. 127. It sought, among other things, to introduce evidence pursuant to Federal Rule of Evidence 404(b) as to prior acts of fraud Defendant engaged in with witness Debbrah Easterwood. The Government also sought to prevent Defendant from offering into evidence the criminal convictions sustained by several prosecution witnesses.

Defendant did not oppose the Government's motions, nor did he file his own motions. Instead, Defendant filed a request to continue the trial. ECF No. 141. At the December 4, 2014, hearing on Defendant's motion to continue, Trial Counsel argued he had scheduling conflicts during the week of December 7, which he had thought the Court would have accommodated if the trial started December 1, but not if the trial was delayed one week. Dec. 4, 2014 Tr. at 7:3-8. The Court repeatedly questioned Trial Counsel as to whether he was prepared to go to trial, and Trial Counsel was adamant

that the only conflict was as to his schedule. Id. at 7:9-9:1. In fact, according to Trial Counsel, he had been prepared on the original December 1 trial date and had actually appeared for Court that day because, for some reason, he did not receive the notice that the trial had been continued. Id. at 5:8-20. The Court denied Defendant's request to continue and granted the Government's motions in limine. Id. at 9:10-12, 10:19-21.

On, December 8, the first day of trial, the Court again questioned Trial Counsel about his preparedness, pointing out that Defendant still had not opposed the Government's evidentiary motions. Tr. of Trial Day One, Dec. 8, 2014, ECF No. 235, 2:15-3:20. Trial Counsel advised that his decision not to oppose the motions was strategic. Id. According to Trial Counsel, he does not file pleadings just for the sake of doing so or to appease clients. Engel Decl. ¶ 23.

Also on the first day of trial, the Government filed a Memorandum of Law Regarding the Admissibility of Adoptive Admission, advising that it intended to offer the testimony of witness Crystal Melena. ECF No. 147. She was expected to testify that that at one point she asked Defendant, "This isn't your money, right?" and he failed to respond. Id. Trial Counsel did not object to this evidence, which was admitted.

The gist of what the Government thereafter proved at trial is that, from approximately March 2008 and July 2010, Defendant, along with his co-conspirators, raided high-value accounts at various FDIC-insured financial institutions and withdrew funds belonging to those account owners for themselves. More specifically, the co-conspirators set up joint accounts between the owners of these high-value accounts and members of the conspiracy. They then had funds transferred from the high-value accounts, to the joint accounts, and then to the individual conspirators' accounts for withdrawal in the form of cash, cashiers' checks, or further transfers.

On December 11, 2014, the jury found Defendant guilty on all counts, and the Court ordered him remanded, based in part on the Court's finding that Defendant was not truthful when he testified.

///

As the Court explained:

> **The Court:** And that's why I'm not certain that I can believe what I'm hearing at this point in time, Mr. Ray. Because I sat here and watched you for an hour and a half, and I listened to everything that was said. And based upon the evidence that had been presented, it just was incredible.
>
> So for you to tell me at this point in time that you believe that I should trust you and listen to you, that you're telling me the truth, you would have been better off if you hadn't said a word yesterday. Much better off.
>
> And I'm not penalizing you for exercising your constitutional right. Those others that were involved in this conspiracy decided to plead. They pled out early, and, as such, the Court does not have all of the time to listen and evaluate the statements that were given.
>
> And, quite frankly, the statements that were provided by your co-conspirators, two that were in custody, were far more believable than what I heard yesterday.
>
> And after giving this some additional thought, I just don't believe that I can feel that the Court can trust you at this time. I'm ordering remand immediately. That will be the order pending judgment and sentence.

Trial Tr. Day Four, Dec. 11, 2014, ECF No. 236, 5:13-6:10.

The following month, Defendant advised the Court via letter that he had fired his Trial Counsel effective January 20, 2015. ECF No. 178. On February 5, 2015, the Court granted Defendant's motion to represent himself. ECF No. 176. The Court also advised Defendant, however, that while proceeding pro se, he would be held to the same standards as any attorney and would be bound by any decisions he made during that time. Defendant thereafter filed a motion to dismiss, motion to vacate/dismiss, amended motion to vacate/dismiss, motion to extend deadline for filing under Federal Rule Criminal Procedure 29(a), and an affidavit in support of motion to extend 29(a) deadline. ECF Nos. 179, 183, 186, 189, 194. Subsequently, on April 9, 2015, the Court granted Defendant's request for the appointment of his current counsel, who in turn filed the instant Motion. ECF No. 203, 204.

///

///

## ANALYSIS

Defendant argues that a new trial is warranted because Trial Counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment. More specifically, Trial Counsel purportedly failed to: (1) adequately prepare for trial (by failing to conduct pretrial investigation, to prepare Defendant to testify, or to prepare for trial himself); (2) adequately advise Defendant regarding the Government's plea offers; (3) object to the admission of highly prejudicial 404(b) evidence; (4) object to the exclusion of criminal convictions of witnesses Debbrah Easterwood, Reginald Thomas, and an unnamed witness with a juvenile record; and (5) object to the Government's memorandum requesting the admissibility of Defendant's adoptive admission. Defendant also argues that the cumulative effect of Trial Counsel's ineffective representation was of such magnitude that it resulted in a denial of Defendant's Fifth Amendment right to due process and violated his Sixth Amendment right to a fair trial.

The Government opposes Defendant's Motion arguing first that it is time-barred because, even allowing for tolling while Defendant was still represented by Trial Counsel, the motion was not brought (nor was any extension requested) within fourteen days of the jury verdict. Assuming the motion was timely filed, however, the Government also asks the Court to decline to resolve it because ineffective assistance of counsel claims ("IAC claims") are more properly entertained on habeas review. Finally, the Government opposes each of Defendant's claims on the merits.

In response, Defendant contends that his legal representation was "so inadequate" that his case fits within one of the exceptions to the general rule that IAC claims are better suited to habeas proceedings. Defendant abandons, however, a number of his substantive arguments. More specifically, Defendant withdraws his arguments based on Trial Counsel's alleged pretrial failure to investigate or to discuss the Government's plea offers with Defendant because he acknowledges that he cannot show prejudice. Accordingly, the only claims left for adjudication are Defendant's

arguments that:

> (1) Trial counsel failed to prepare Defendant to testify.
>
> (2) The Court itself questioned whether trial counsel was prepared for trial.
>
> (3) Trial counsel failed to object to the Government's motions in limine seeking to admit 404(b) evidence and to exclude various criminal convictions sustained by several witnesses or its notice of intent to introduce Defendant's adoptive admission.
>
> (4) The cumulative effect of trial counsel's ineffective representation requires granting a new trial.

The Court concludes that, as a threshold matter, it may properly consider Defendant's IAC claims on the instant motion. Defendant's Motion is nonetheless DENIED both as untimely and because it fails on the merits.

**A.     The Court may entertain Defendant's current IAC claims.**

The general rule is that IAC claims should be raised by way of a 28 U.S.C. § 2255 petition rather than on a post-judgment motion for new trial. United States v. Steele, 733 F.3d 894, 897 (9th Cir. 2013). The Ninth Circuit has determined, however, that "a district court need not invoke an appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue prejudgment." Id. (citations and quotation marks omitted). "[W]hen a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." Id. (citations and quotation marks omitted). "This decision is best left to the discretion of the district court." Id. Generally, there are two "extraordinary exceptions to this general rule [that IAC claims should be raised on habeas]: (1) where the record . . . is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." United States v. McGowan, 668 F.3d 601, 605 (9th Cir. 2012) (citations and internal quotation marks omitted).

"The decision to interrupt the prejudgment proceedings to inquire into the merits of an ineffective assistance of counsel claim may depend on, among other things, whether the court would need to relieve the defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim." Steele, 733 F.3d at 898 (citations and quotation marks omitted). "The district court's decision may also depend on the existence of evidence already in the record indicating ineffective assistance of counsel, or upon the scope of the evidentiary hearing that would be required to fully decide the claim." Id.

In this case, each of Defendant's claims can be resolved on the current record, without an evidentiary hearing, and with the assistance of already newly-appointed, independent counsel. The Court thus exercises its discretion to entertain Defendant's arguments now.

**B.     The Motion for New Trial is nonetheless time-barred.**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). However, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

Since Defendant's arguments are not grounded on newly discovered evidence, he thus had fourteen days post-verdict to file the instant Motion. Because the jury returned the guilty verdict on December 11, 2014, Defendant had until December 26, 2014 to file the pending Motion. Of course, Trial Counsel was representing Defendant from the date of the guilty verdict until February 5, 2015. Even if the Court were to toll the filing period until Defendant was appointed new counsel, however, Defendant's Motion was due on February 19, 2015. Defendant did not file his Motion until August 20, 2015, well after that date.

///

The Court has not been presented with any persuasive argument that justifies such a delay in filing. Defendant's pro se status during a portion of this time does not excuse his delay. To the contrary, the Court made quite clear to Defendant that he would be held to the same procedural standards as he would be if represented. Moreover, Defendant proved more than capable of filing multiple motions, including a request for an extension of time to file a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. His ability to file these motions suggests that he was aware of the relevant deadlines and how to petition the Court, but consciously chose not to file a new trial motion or to request an extension to file under Federal Rule of Criminal Procedure 33. Finally, it is telling that, even now, Defendant makes no real attempt to argue that his motion was timely filed. As such, the Motion for New Trial is DENIED as untimely.

### C. Even if Defendant's Motion was timely, however, it would still fail on the merits.

"To prevail under Strickland v. Washington, 466 U.S. 668 (1984), [Defendant] must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced the defense." Pizzuto v. Arave, 280 F.3d 949, 954 (9th Cir. 2002) (citations and internal quotations marks omitted). "Performance is measured as of the time of counsel's conduct, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 954-55 (citations and internal quotation marks omitted). The Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id. at 955 (citations and quotation marks omitted).

///

As indicated above, Defendant contends that Trial Counsel failed to prepare him to testify, that the Court itself questioned whether Trial Counsel was prepared to try Defendant's case, that Trial Counsel erred in failing to raise a number of evidentiary objections, and that the cumulative effect of Trial Counsel's errors resulted in violations of Defendant's Fifth and Sixth Amendment rights. None of Defendant's claims warrant ordering a new trial.

### 1.     Defendant's testimony

According to Defendant, Trial Counsel failed to prepare him to testify. More specifically, Defendant alleges that Trial Counsel's multiple failures, including not interviewing prosecution witnesses, not disclosing or reviewing the Government's witness statements and discovery with Defendant, not advising Defendant of the evidence against him, and not meeting with Defendant to prepare him for his trial testimony all resulted in a "general lack of trial readiness, to a point where [Defendant] did not want to testify." Def.'s Mot. at 11. Trial Counsel purportedly nonetheless "made an unprepared [Defendant] testify because he did not have any other trial strategy." Id. Defendant thus contends that he was not informed of the risks and benefits of testifying and is entitled to a new trial.

The primary problem with this argument is that even if Trial Counsel did not disclose witnesses, discovery, or other evidence to Defendant (which Trial Counsel disputes), the Government did make such disclosures. The Government engaged in a reverse proffer setting out for Defendant in detail its case against him. Accordingly, Defendant cannot argue he was prejudiced by any ignorance.

Moreover, notably absent from Defendant's Motion is any allegation that he was prejudiced by his decision to testify. The evidence against Defendant was overwhelming, and his only reasonable defense was as to his state of mind or lack of mens rea, namely that Defendant did not know his conduct was wrongful. Had Defendant not testified, the jury would have reached the same decision. The Government did not need Defendant to testify to make its case. Stated another way,

while Defendant's complete lack of credibility may have been the last nail in his coffin, there was ample evidence by which to convict him without his testimony.

### 2. The Court's inquiry into Trial Counsel's preparedness

Defendant emphasizes that even the Court seemed concerned with whether Trial Counsel was ready to try Defendant's case. This argument appears to be less a standalone argument and more an attempt to bolster Defendant's other "lack of preparation" contentions. Essentially, Defendant argues that Trial Counsel must have been unprepared if the Court questioned his readiness. Defendant further contends that Trial Counsel's responses to the Court's inquiries prove that Trial Counsel was not equipped to try this case.

The factual predicate for this argument arose at the December 4, 2014, hearing on Defendant's Motion to continue his trial. Trial Counsel indicated that scheduling conflicts prevented him from trying Defendant's case on the continued date and that the continuance also presented a conflict with a final exam Defendant was scheduled to take. Dec. 4, 2014 Tr., 2:5-12; 4:1-5:3. The following lengthy exchange then occurred:

> **The Court:** My first question, Mr. Engel, is that you say that you did not get notice that the trial date had been moved from the 1st to the 8th.
>
> **Mr. Engel:** Correct, Your Honor.
>
> **The Court:** So you were prepared to go to trial on Monday?
>
> **Mr. Engel:** Correct.
>
> . . . .
>
> **The Court:** Well, since [the trial] was supposed to have started Monday of this week, then you're ready to go. The reason I say that is because I know the government has filed motions in limine, and you haven't filed any motions in limine. I've not seen objections to the motions in limine. So I just want to make sure that you're prepared to go to trial on the 8th of December 2014 as previously ordered.
>
> **Mr. Engel:** Well --
>
> **The Court:** You know, I'm asking you this because I've been around this before. And if you're going to say that you're not prepared to go to trial, I want you to tell me that right now.

1
2
3    So are you prepared to go to trial?  Because this should have been going to trial last -- today is Thursday the 4th, so it would have been Monday the 1st.  So all of your witnesses should be ready to go, all of your evidence should be ready to go. And so --

4
5
6
7    **Mr. Engel:** Well, then, yes, Your Honor, theoretically we would have three days of trial behind us now.  It could have bled over to Monday.  We talked to Mr. Morris, and he thought we could probably wrap it up Wednesday, maybe Monday at best.  And four days into trial, if I needed some extra time to come in late, I think the Court would have allowed that then because we were almost done.

8
9
10   But because of these three days now, I stacked everything into December.  And there are a couple -- Monday is okay, but Tuesday and Wednesday I have an asylum matter, and I have a matter in Fairfield, a high profile matter there.  So I stacked in reliance on 1, 2, 3 December.

11
12   **The Court:** But we confirmed the trial date of 1, 2, 3 and then 8 and 9.  So the 8th and 9th of next week should be blocked off anyway.

13
14   **Mr. Engel:** The 8th and the 9th, I would -- I would do something -- of course, with four days of trial behind us, I think, you know, the Court probably would have, you know, let me come in later, and I could do early in the morning.

15
16   But now we haven't proceeded at all, so it's going to be three days next week --

17   **The Court:** Are you prepared to go to trial Monday?

18   **Mr. Engel:** Via calendar --

19   **The Court:** No. I just --

20   **Mr. Engel:** Okay.

21
22   **The Court:** The question is, are you prepared to go to jury trial Monday, December 8th, at 9:00 a.m., Mr. Engel? Just tell me.

23   **Mr. Engel:** I -- yes, Your Honor. This is not some ruse to slip --
24
25
26   **The Court:** No. I just -- again, I just want to make sure that I understand from you right now, are you ready to go to trial Monday, December 8th, 2014, at 9:00 a.m.?

27   **Mr. Engel:** I was prepared last Monday as well. I mean, I haven't gotten unprepared.

28   But I implore, Your Honor, I am a sole practitioner --

**The Court:** Just again, I'm going to ask you, Mr. Engel, to answer the question. Are you prepared to proceed to a full jury trial December 8th, 2014, at 9:00 a.m.? I am. The government is. I have a courtroom, and we have jurors that are going to be here, and this can be done in three days.

And the problem is, the way this court's calendar is, and I think you know that, I can't just simply say let's move it to January 20th because we've got something else already booked then.

This case has been around since 2011. And, again, as Mr. Morris indicated, you've got a person sitting in Sacramento County Jail for 15 months waiting to come testify. You have a lot of other things that are happening, and we know that witnesses' memories start to fade, witnesses die, a lot of things happen.

**Mr. Engel:** I've heard of that.

**The Court:** And we're in this situation, and that's one of the things that we have to deal with.

So, again, I just want to make sure you tell me, yes or no, are you prepared to go to jury trial December 8th, 2014, at 9:00 a.m. and go and present your client's case?

**Trial Counsel:** I am – I can prepare his case, present his case, Your Honor.

**The Court:** You're prepared?

**Trial Counsel:** I'm prepared, as I was last Monday. But –

**The Court:** All right.

Id. at 5:4-9:1.

Although Trial Counsel repeatedly made clear that he had been prepared for trial on the original December 1 trial date and that the request for continuance was scheduling based, Defendant now makes much of the fact that Trial Counsel at one point said, "I can prepare his case," a semantic distinction that Defendant contends means his attorney was entirely unprepared. In light of the record as a whole and Trial Counsel's demeanor in open Court, the Court found otherwise. The Court determined that Trial Counsel was prepared and that scheduling convenience did not warrant a continuance.

///

Regardless, on the first day of trial, the Court again questioned Trial Counsel for the record:

> **The Court:** Mr. Engel, I asked you last Thursday whether you were prepared to proceed with the trial today, and you indicated to me, after questioning you approximately ten times, that you were ready to proceed, and that you were fully apprised of all of the issues in this case, even though there had been no responses to the motions in limine filed by the Government, and you had not filed any trial briefs, you hadn't filed any motions yourself or anything else.
>
> And my reason for asking is, I do not want to have this case come back to me -- being very blunt and honest with you -- on a 2255 because of ineffective assistance of counsel.
>
> Are you fully prepared to proceed to represent your client in this trial now?
>
> **Trial counsel:** I am, Your Honor.
>
> **The Court:** All right. I just want to make sure. I want to hear that now to make sure that there is nothing that is going to come back in the future on this particular case.
>
> **Trial counsel:** Your Honor, that's not a thought or a tactic. I don't have to divulge to the prosecution my plans or my -- you know, my tactics in the case.
>
> **The Court:** I'm not asking about the Government. I'm talking about from the Court's perspective. Because when I see things happen like this leading up to a trial, generally speaking I will have it come back at some point in the future. It's not necessarily you but your client saying, well, my attorney wasn't prepared. He didn't do this. He didn't do that. I want to make sure that everything that you're doing right now, you're prepared to go forward.
>
> **Trial Counsel:** I was prepared last Monday, Your Honor. I'm prepared today.

Tr. of Trial Day One at 2:15-3:19.

This exchange makes clear that counsel represented he was prepared. Absent some evidence aside from the above exchange where counsel said he "can" prepare, there is no reason to doubt his assertions that he was ready. Indeed, if Defendant truly believed the record was so clear to the contrary, Defendant would have argued in his new trial motion that the Court erred in denying the Motion to Continue in the first place. He has not.

14

Finally, and perhaps more importantly, however, Defendant does not point to anything Trial Counsel would have done differently if, theoretically, he had been more prepared. Indeed, as previously stated, the evidence against Defendant was overwhelming, and Defendant has not identified, nor can the Court discern, what prejudice he suffered here.

### 3. Evidentiary issues

Defendant next argues that Trial Counsel was ineffective in dealing with several evidentiary issues. More specifically, Defendant contends that Trial Counsel was ineffective because he failed to object to: (1) the introduction of 404(b) evidence of prior fraudulent acts Defendant participated in with witness Debbrah Easterwood; (2) the Government's request to exclude certain witnesses' criminal convictions (i.e., primarily misdemeanors and juvenile records as well as co-Defendant Reginald Thomas's firearms convictions); and (3) the Government's notice that it intended to offer evidence of Defendant's adoptive admission during a conversation with Crystal Melena. The problem with each of Defendant's current arguments is that any objection raised to any of the above would have been futile. The Court's decisions were clearly proper and would not have been any different had if Defendant had objected. This is again an instance where Defendant cannot show prejudice.

Defendant first argues that trial counsel was ineffective by failing to object to the Government's motion in limine seeking to admit 404(b) evidence in the form of Debbrah Easterwood's testimony that she and Defendant engaged in check and credit card fraud schemes prior to the conduct charged in the operative indictment. According to Defendant, the Government's notice was lacking because it did not indicate the time-frame of the prior bad acts, and those acts thus could have been inadmissible as too remote. Defendant then argues that the evidence was insufficient for the jury to make a finding that Defendant committed the prior bad acts (i.e., that Ms. Easterwood's uncorroborated testimony was not enough). Defendant thus concludes that Trial Counsel should have objected to the introduction of this evidence, and, if he had, it

would have been excluded. Defendant is wrong. Although the Court granted the Government's motions in limine as unopposed, had there been an objection, these motions would have been granted on the merits.

Under Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Rule 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "The proponent of the 404(b) evidence must show that the evidence (1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time." United States v. Hardrick, 766 F.3d 1051, 1055 (9th Cir. 2014) (citations and quotations omitted). "Rule 404(b) evidence offered to prove knowledge need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." Id. (citation and quotation marks omitted). "If the four-part test is satisfied, the evidence is admissible unless 'its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" Id. (quoting Fed. R. Evid. 403).

When the Government offered Easterwood's testimony at trial, it became clear that the events about which she testified were not so remote as to keep them from the jury. Accordingly, any flaw in the notice could easily have been remedied. In addition, Easterwood's testimony was directly relevant to Defendant's "intent, . . . plan, knowledge, . . . [or] absence of mistake." The fact that Easterwood's testimony was otherwise uncorroborated goes to its weight, not its admissibility. Indeed, the jury was free to accept or reject her version of events. That said, despite the ample means by which Easterwood was impeached, she was nonetheless a credible witness, and the jury could properly have believed she was telling the truth about Defendant's prior schemes,

which in turn would have undermined Defendant's argument that he was an unwitting pawn in a bigger conspiracy.  This evidence, which was only prejudicial because it was so highly probative, was properly admitted.

Defendant makes a similar argument that a new trial is warranted because Trial Counsel failed to object to the admission of certain witnesses' criminal convictions.  Under Federal Rule of Evidence 609, prior criminal convictions are admissible to impeach a witness if the crime "was punishable by death or by imprisonment for more than one year"[1] or "if the court can readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement."  Fed. R. Evid. 609(a).  However, "if more than 10 years have passed since the witness's conviction or release from confinement for it, . . . [e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweigh its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).

The Government's motion would have been properly granted even if Trial Counsel had lodged an objection.  First, several of the subject criminal convictions were aged misdemeanors having nothing to do with honesty, and one was a juvenile arrest record, from which it could not be discerned whether a conviction had ever actually resulted.  These convictions, assuming they exist, were clearly inadmissible.[2]  The only felonies the Government sought to exclude were Reginald Thomas's firearms convictions, which had no bearing on his propensity for truthfulness and could have actually prejudiced Defendant should the jury have used that evidence to infer that Defendant was associating with armed criminals or taking part in a criminal enterprise

---

[1] This section is also subject to Rule 403.  Fed. R. Evid. 609(a)(1)(A).

[2] Aside from the lack of any probative value, almost all of these convictions were over ten years old, and Defendant was required to adhere to the notice requirements of Federal Rule of Evidence 609(b)(2), which he failed to do.

that was routinely armed.  Moreover, there was ample additional impeachment evidence available to the defense, including the fact that Thomas was a convicted felon, had already pled guilty to the charges in this criminal case, and was testifying pursuant to a cooperation agreement.  The probative value of this evidence was thus substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 609(a)(1)(A) and 403.  In sum, whether or not Trial Counsel objected, the rulings would have been the same.[3]

Finally, Defendant argues that Trial Counsel was ineffective because he failed to object to the Government's notice regarding witness Crystal Melena's testimony.  The Government accurately anticipated that Melena would testify she said to Defendant at one point (after a failed bank transaction during which a third party was arrested), "This isn't your money, right?"  Defendant did not respond, and his silence could be construed as an admission that her statement was accurate.  The admission of such evidence requires the Court to make the threshold determination that sufficient foundational facts had been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement.  United States v. Sears, 663 F.2d 896, 904 (9th Cir. 1981).  Once the Court has made such a finding, the jury is then charged with making the actual factual finding as to whether that all occurred.

Given this standard, Defendant's motion is flawed for two reasons.  First, the Court did not admit the evidence just because there was no objection.  It admitted the evidence after reviewing the standard and making the appropriate finding that Melena's testimony provided a sufficient foundational basis to support a jury finding that Defendant heard, understood, and acceded to the statement.  Trial Tr. Day Three, Dec. 10, 2014, ECF No. 165, 46:18-47:16.  The Court was well aware of what the anticipated objection would be and nonetheless permitted the testimony against the backdrop of the proper standard.  Accordingly, even had Trial Counsel objected, the Court would have

---

[3] In footnote 3 on page 31 of Defendant's motion, he mentions two additional state court fraud convictions sustained by Thomas that were not referenced in the Government's motion in limine. Defendant indicates that if these charges were not disclosed to Defendant, it raises a Brady issue, but no Brady claim is currently before the Court.

admitted the evidence.  Second, even though Trial Counsel did not lodge an objection, he aggressively cross-examined Melena as to whether there could be any other explanation for Defendant's silence.  Id. at 59:16-61:8.  Because the Court followed the appropriate protocols and made the requisite findings, and because Trial Counsel strenuously questioned Ms. Melena about her testimony, Defendant cannot show how the result of his trial would have changed if Counsel had objected.  The conclusory assertion that Defendant was prejudiced is not enough.

As such, because the rulings would have been the same even if counsel had objected, Defendant cannot show he was prejudiced as is necessary to sustain an IAC claim.

### 4. Cumulative errors

Finally, Defendant argues that all of Trial Counsel's errors taken together resulted in a cumulatively unfair trial.  Defendant has not identified any prejudice he would have suffered as a result of Trial Counsel's conduct.  He was advised on multiple occasions of the evidence against him, the Court's evidentiary rulings would not have changed if Trial Counsel objected, and the evidence against Defendant, even absent his testimony, was overwhelming.  This argument is rejected as well.

## CONCLUSION

For the above reasons, Defendant's Motion for New Trial (ECF No. 223) is DENIED.

IT IS SO ORDERED.

Dated: January 11, 2016

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT